## Commonwealth v. Long et al.

*George Kunkel*, special prosecutor, and *Carl B. Shelley*, district attorney, for Commonwealth.

*Thomas C. Caldwell*, of *Caldwell, Fox & Stoner*, for defendants.

Fox, J., May 12, 1941.—We have before us a motion in each of the above-stated cases, in arrest of judgment and for the discharge of each of the defendants.

The Commonwealth by private counsel in each case resists the motion and request of each of the defendants.

The defendant Long in the case entered to no. 73, January sessions, 1941, was indicted with "having unlawfully, wilfully, knowingly, and maliciously entered the voting machine booth with ones, Wellington G. Barbour, Louise Gephart, and other electors, etc."

Defendant Shenfeld in the case entered to no. 74, January sessions, 1941, was indicted with "having unlawfully, knowingly, wilfully, and maliciously refused to permit one, W. H. Hoyt, being then and there a duly qualified registered elector of the 5th precinct, 7th ward, and being then and there a watcher duly appointed by the Democratic party and holding a watcher's certificate, to be in the polling place of the said election district during the time the polls were open, when no other appointed watcher of the Democratic party was then and there present."

Considerable testimony was taken as to both indictments.

As to the first indictment, there was evidence that defendant Long did assist Barbour and Gephart, neither of whom was suffering from any disability so as to require any assistance in voting. As to the assistance by Long of the said Barbour, testimony was taken pro and con.

As to assisting Louise Gephart, the testimony discloses that she met defendant Long on the way to the polls in the morning of the election day; that she said to Long that she did not know how to use the machine in voting upon a certain question then before the voters. When they got to the polls they went to the booth. The operator of the voting machine was not present and she entered the booth; did not draw the curtains; Long, the defendant, did not enter the booth in entirety, but stood on the edge of the booth, partly in and partly out, and pointed to the lever which she would have to use to vote upon the particular question, viz, yes or no, without advising her how to vote.

The case as to each was left to the jury to determine by its verdict the guilt or innocence of defendant Long.

As to defendant Shenfield, no. 74, supra, the evidence discloses that one Beatty claimed to be a Democratic watcher and he there so served at the primary in September 1940; a dispute arose as to him, Danner, Hoyt, and Mumma, each of whom claimed to be the proper watcher. Two of the judges of the court then sitting to receive communications and complaints relating to controversies, etc., received a communication as to this controversy; the polls were ordered to be temporarily closed and the judge of elections and contesting watchers were brought before two of the judges in the court house, who heard the matter and determined that Beatty was not a watcher and could not so act, but that the other contestants were the Democratic watchers and could act as such, and immediately after that the officer and watchers returned to the polls which were again opened and there was no further dispute concerning the watchers.

The cases were called for trial and heard together. After the argument of counsel for defendants and private counsel for the Commonwealth, the trial judge charged the jury and the jury then withdrew to the jury room for consideration of the evidence and rendition of its verdict in each case. The jury retired sometime in the afternoon; the trial judge instructed the jury that he would await the rendition of its verdict until 5 p.m., and if they did not arrive at a verdict before that hour, but afterwards, the jury should seal its verdict and deliver it on the following morning; and on the following day at 9:30 a.m., the jury rendered the following verdicts. The verdict in no. 73 was as follows:

"Honorable Judge. March 28, 1941. Prosecuting Attorney Senator George Kunkle. The jury, in arriving to a decision in the case of Commonwealth v. Harry Long, have found above-stated defendant of a misdemeanor through instructing electors at voting booths.

"Although not finding this defendant guilty of criminal intent: Nevertheless, we find him guilt of neglect in observing the governing laws of elections.

"Cost to be left to discretion of the court."

The verdict in no. 74 was as follows:

"Honorable Judge. March 28, 1941. Prosecuting Attorney Senator George Kunkle. The jury in arriving to a decision in case of Commonwealth v. Raymond Shenfield. Have found a misdemeanor in omission of obtaining Watcher's certificate from qualified appointee.

"Although not finding above-stated defendant guilty of criminal intent: Nevertheless, we find him guilty of neglect in observing the governing laws of elections.

"Cost to be left to the discretion of the court."

After the verdicts were received and recorded the trial judge suggested that he send the jury back to the jury room to reform its verdict, which was concurred in by the private counsel for the Commonwealth, but was objected to by the attorney for defendants and the jury was not sent back. No exceptions were taken to the charge of the court.

In the case of Walters v. Junkins, 16 S. & R. 414, 415, it is said:

"The law allows the jury all reasonable opportunity, before their verdict is put on *record*, and they are *discharged*, to discover and declare the truth according to the judgment. The court may also of their own accord, send the jury back to re-consider their verdict, if it appears to be a mistaken one, and before it is *received* and *recorded*. In 7 *Bac. Ab. page* 9, it is laid down to the same effect. So also, 1 *Inst.* 227 and *P. Wms.* 211.

"Although these cases do not expressly determine the point, the *inference is irresistible, that where the verdict is received, recorded, and the jury dismissed, as here, they have not the power to alter their verdict."

In the case of Reitenbaugh v. Ludwick, 31 Pa. 131, 141, the court said:

"The cases cited of McConnel v. Linton, 4 Watts 357, Wolfran v. Eyster, 7 Watts 39, Walters v. Junkins, 16

S. & R. 415, were abundant authority for the course pursued, in regard to a correction of the verdict. The jury having sealed it up, and separated on coming into court, it was found not to be in form to meet the whole case, and before receiving and recording it, the court sent them back to put it in due form. This is fully sustained by the cases, and, it is believed, is the universal practice throughout the state. The sealed paper was in fact not the verdict, until it was recorded, and until that was done, it was within the discretion of the court to send the jury back to consider and correct mistakes, or put it in form. A verdict once recorded, and the jury dismissed, if but for an instant, they cannot be recalled: Walters v. Junkins, 16 S. & R. 415. It is beyond the reach of any discretion, and to exercise it, would be an error reviewable here, which is not so, ordinarily, in cases like the present. This discretion is an incident to the mode and manner of the trial, and must be left to the courts, and, unless in a flagrant exercise of it, is not reviewable. It is in fact a condition implied of permitting the jury to seal up their verdict, that it may be subject to this mode of correction; otherwise, it is probable the practice never would have been allowed to prevail."

We are of the opinion that the court erred in permitting the verdict to be recorded as it was brought in, but since it was recorded, it is now too late to reform it. We instructed the jury that their verdict should be either guilty or not guilty and we are of the opinion that the jury in its verdict in each case shows that it intended to find defendant not guilty as indicted, and that is strengthened by the fact that they had been instructed that if they found defendants guilty they have nothing to do with the costs, but if they found them not guilty, they must dispose of the costs.

This they undertook to do by proxy.

Wherefore, we are of the opinion that the motions in arrest of judgment and discharge of defendants must be sustained.

And now, May 12, 1941, upon due consideration, the motions in arrest of judgment and discharge of defendants, in both of the above-captioned cases, are sustained, defendants are discharged, and the record costs are placed upon the county.